By the Court, Jones, J.
The general principle that a tenant under a demise for a year or more by holding over after the expiration of his term, becomes tenant from year to year, is well supported by authority. (Conway v. Starkweather, 1 Denio, 113.) Indeed the principle has not been denied in the case at bar. But it is contended, 1st. That the tenant has a reasonable time after the expiration of his term, within which to remove his goods and chattels; and that as in this case the tenant held over only for such reasonable time, there is no such holding over as constitutes him a tenant from year to year. 2d. That the holding over must be such, in its character, as to raise a presumption, arising from the length of its duration, or the circumstances *447 under which it occurred, that the tenant intends to continue his occupancy as a tenant.
In the. present case, if the lease of April 3d, 1862, be wholly disregarded, then the defendants are clearly tenants from year to year, and could not terminate the tenancy without giving six months’ notice, which has not been done. The defendants entered under a valid lease, the term whereof expired at a time certain. After the expiration of that term possession was clearly retained for a sufficient length of time to indicate an intention to hold over, which holding over was assented to by the landlord, and the defendants then became tenants from year to year; and this tenancy having commenced, will continue until one or the other parties gives six months’ notice of an intention to determine it. (Pugsley v. Aiken, 11 N. Y. Rep. 494, 497.) No such notice having been given, the tenancy did not end on the 1st of May, 1863, but existed during the year ending May 1, 1864. Consequently, in this aspect of the case, the defendants’ liability for the rent of the year ensuing May 1st, 1863, in no way depends on the solution of the question whether a tenant has a reasonable time, after the • expiration of his lease, within which to remove, nor of the question as to whether, to make him a tenant from year to year, he must hold over after the expiration of his term a sufficient length of time to indicate his intention to remain a tenant.
Let us now consider the effect of the lease of April, 1862. The defendants say this lease of 1862 was void; therefore the tenancy, by its operation, has become a tenancy at will, and being such, it could be terminated at any moment at the will of either party, and it was thus terminated when possession was given up. This is in effect saying, in one and the same breath, 1st. The lease of 1862 being void, it cannot operate to create a tenancy for the specific term demised by it. 2d. The lease of 1862 being void, it can operate to create a tenancy at will.
The lease, if void, can, of itself alone, have no operation. *448 The defendants, therefore, being in possession under a former valid lease, and continuing in possession after its termination, may well be regarded as holding over under the terms and conditions of that former lease, and in that event a tenancy from year to year would arise. If, however, the defendants are to be regarded as having entered under the void lease, (and its possession during the year ending May 1, 1863, must be referred either to an entry under the void lease, or a holding over on the terms and conditions of a former lease,) the possession under it, and the payment and acceptance of rent under it, would create a tenancy from quarter to quarter, in which case it could hot be determined without giving three months’ notice. (Anderson v. Prindle, 23 Wend. 616.)
If, then, this lease of 1862 be void, the tenancy is either from year to year or from quarter to quarter. It is unnecessary to determine which, because neither a six months’ nor a three months’ notice has been given, and consequently the tenancy continued during the period for which the rent is claimed.
The notice given by the street commissioner was clearly insufficient to terminate the tenancy. It should have been given either three or six months (depending on whether the tenancy was from quarter to quarter or year to year) prior to one of the usual quarter days, and should notify the landlord that the tenancy would be terminated on the next ensuing quarter day. (Anderson v. Prindle, 23 Wend. 616, 619. 2 Blade. Com. 146.)
It necessarily follows that if the lease of 1862 be void, the plaintiff is entitled to recover, notwithstanding the two objections above urged, for the same reason upon which he would be entitled to recover as above stated, if this lease had not been attempted to be made.
But suppose the lease of 1862 to be valid, how then stands the case ? The. only objections raised to a recovery in this aspect of the ease are the two above mentioned, the validity of which will now be considered.
*449 1st. As to the objection that the tenant has a reasonable time, after’ the expiration of his term, to remove his goods,' &c., and that the defendant held over only for such reasonable time, and therefore there was no such holding over as constituted the defendant a tenant from year to year. The argument depends on the soundness of the proposition that the tenant has a reasonable time after the expiration of his term within which to remove his goods and chattels. This proposition is based on a • statement in Taylor’s Landlord and Tenant, to the effect that “ after the tenant has quit possession, and his tenancy is ended, he has still a right to " enter upon the land in order to remove his goods and utensils,’’ and the authorities cited in support of the proposition. Assuming the statement made by Mr. Taylor to be supported by the authorities, to its full extent, still it contains no warrant that the tenant may remain in possession for the ■ purpose of removing his goods and utensils, but simply that after he has quit possession he may enter on the land for the purpose of making such removal; But the authorities cited by Mr. Taylor in support of his statement, to wit, 2 Black. Com. 147, and Ellis v. Paige, (1 Pick. 43,) do not sustain it to its full extent. By those authorities this right of entry is confined to tenants whose terms depend on an uncertainty, among them tenants at will. Thus Blackstone, at page 145, says: “ With regard to emblements, or profits of lands sowed by tenant for years, there is this difference between him and tenant for life; that when the term of tenant for years depends on a certainty, as if he holds from midsummer for ten years, and in the last year he sows a crop of corn, and it is not ripe and cut before midsummer', the end of his term, the landlord shall have it; for the tenant knew the expiration of his term, and therefore it was his own folly to sow what he could never reap the profit of. But when the lease for years depends upon an uncertainty, as upon the death of a lessor, being himself only tenant for life, the estate for years not being certainly to expire ^t a time foreknown, the tenant shall have *450 the emblements, in the same manner as a tenant for life, or his executor shall be entitled thereto'. Not so if it determine by the act of the. party himself, as if tenant for years does any thing that amounts to a forfeiture; in which case the emblements shall go to the lessor, and not to the lessee who hath determined his estate by his own default.”
This distinction between a lessee for years whose term depends on a certainty, and- a lessee for years whose term depends on an uncertainty, applies equally between a tenant for years whose term depends on a certainty, and a tenant at will, and for the same reason, viz., the point of uncertainty. Thus, Blackstone says: “ If the tenant at will sows his land, and the landlord, before the com is ripe or reaped, puts him out, yet the tenant shall have the emblements, and free ingress, egress and regress to cut and carry away the profits. And this for the same reason on which all cases of emblements turn, viz., the point of uncertainty ; since the tenant could not possibly know when his landlord would determine his will, and thereafter could make no provision against it, and having sown the land, which is for the good of the public, upon a reasonable presumption, the law will not suffer him to be a loser by- it. But it is otherwise, and upon reason equally as good, when the tenant himself determines the will, for in this case the landlord shall have the profits of the land.”
The same principle is applied to the goods' and Utensils of the tenant. “By parity of reason,” sáys Blackstone, “the lessee, after the determination of the lessor’s will, shall have reasonable ingress and egress to fetch away his goods and utensils.”
This right of ingress, egress and regress thus given to a tenant whose term depends on an uncertainty, is founded on the principle that no sudden determination, without the tenant’s fault, of an estate, the time of the expiration whereof is not certainly foreknown" shall tend to the manifest and unforeseen prejudice of the tenant. The principle *451 does not apply to a tenant wnose term depends on a certainty ; and consequently this right is properly denied to him.
If, then* the lease of 1862 is valid, the law- accords to the tenant no time whatever, after the expiration of its term, within which to remove the goods, &c., since the duration of the term depends on a certainty. The first objection is therefore untenable.
The second objection is, that the holding over must be such, in its character, as to raise a presumption arising from the length of its duration, or the circumstances under which it occurs, that the tenant intends to continue his occupancy. The argument is that the holding over is merely presumptive evidence of the continuance of the tenancy ; that consequently it must be sufficiently long to raise a presumption of continuance of tenancy; and of course it follows that such presumption may be rebutted by evidence. This argument the late Supreme Court distinctly met and overthrew, in the case of Conway v. Starkweather, (1 Denio, 113,) Bronson, Ch. J., delivering the opinion of the court.
The right of the landlord to elect to hold a tenant holding over, either as a trespasser or a tenant, rests on the tenant’s breach of his' contract in so holding over, and not on the intention or motive with which he committed such breach. When, however, the question arises as to whether the landlord has elected to hold his tenant as tenant, then the length of time during which the tenant has been allowed to remain in possession without molestation is one fact from which an election to hold him as tenant may be inferred.
It is however urged that the corporation is not liable for the acts of the street commissioner in holding over. It is not necessary to enter into a" discussion as to the power of agents to bind corporations in general, or of the agents of this particular corporation to bind it; for this act of holding over is clearly to he regarded as the act of the corporation itself. The corporation, in the proper and legal exercise of its power, placed its agent, the street commissioner, together with the books, papers and paraphernalia *452 of the office, in these premises. It kept him in these premises, there transacting its business, giving him no direction to change, and providing no other place for liiffi to transact the duties of his agency in, until at last it provided another place, and directed him to remove there, at a time when it was impossible for him so to do without holding over in the premises in question for a sufficient time to enable him properly and with due care to remove the books, papers and documents committed to his care. This holding over, then, was directly caused by the corporation, and it alone is responsible therefor.-
The defendants’ counsel makes the further point that a municipal corporation is incapable of holding over, and cannot create a pecuniary liability except in the manner prescribed by its charter. There are here two distinct propositions; one, that a municipal corporation cannot hold over. It might as well be said that such a corporation is incapable of entering into possession of premises under a valid lease; for a holding over is merely the remaining in possession, after the expiration of the demised term. If it is capable of entering into possession, (which is not doubted,) I fail to perceive,, nor am I informed by counsel, why it is incapable of remaining in possession. If it does remain in possession after the expiration of the demised term, it is liable for the legal consequences of so remaining, unless by its inherent nature, or by some statute, it is relieved therefrom. 'Whether it is so relieved will be considered in the discussion of the second proposition of the point, which is, that a municipal corporation cannot create a pecuniary liability except in the manner prescribed in its charter.
A municipal corporation may make contracts in the same manner and to the same extent-as individuals, and be liable thereon, and for a breach thereof, the same as individuals; it may also do acts, and omit to do acts, and be liable for such commission, or omission, the same as individuals; subject, however,,to the restriction that the contracts entered into, and acts done,, must fall within the scope of its corporate powers, *453 or the acts done must he done while in the exercise of a corporate power, and the acts omitted must be such as are imposed on it, or which should have been done in the performance of some duty resting on it by contract or law; subject also to such further restrictions as may be placed on it by its charter or other statute, in prescribing a mode in which certain contracts shall be made, or acts or duty performed ; in which case it may be as well to state that it seems by the authority of several cases no liability in any form whatever can arise against the corporation for materials furnished to, or services performed for, or other benefit received by, it under a .contract made otherwise than as prescribed, or for any act or duty performed by it in a manner otherwise than as prescribed; but it may be liable for injuries received by reason of negligence in performing the act or duty -in the manner prescribed, and also for wrongs done by either the non-performance or negligent performance of a contract made in the prescribed manner.
The extent to which decided cases have gone, or to which the principle on which they rest may lead, in holding municipal corporations incapacitated from entering into contracts, or incurring liabilities, and relieved from pecuniary responsibility by statutory provisions, is not presented for consideration.
To provide accommodations for the performance of corporate- duties and work, by the officers and agent's of the corporation, falls within the scope of the corporate powers of the defendant; and to this end to become a tenant of premises is also within the scope of such powers. There is no statutory provision (in its charter or otherwise) that I am aware of, and I have been referred to none, providing how this power shall be exercised. Such tenancy may therefore be created or raised in any manner known to the law. It may be by a valid lease, or entering into possession under an invalid lease, and the payment and acceptance of rent according to its provisions; or, at the option of the landlord, by continuing in possession after the expiration *454 of a demised term. In whichever way it' is created or raised, the rules and principles applicable to an individual creating or raising a tenancy in a similar way, and the liability incurred by him thereby, are also, applicable to and incurred by the corporation, there being no statutory provision to the contrary.
In accordance with these views, the plaintiff was entitled to recover rent for the year ending May 1st, 1864.
As the judgment must be reversed by reason of the non-allowance of this rent, it is unnecessary to pass on the exception taken to the exclusion of the evidence offered to show that the premises were not left in as good repair as when taken by the defendant, natural wear excepted, but that they had been greatly injured and damaged, and the damages occasioned thereby.
It may however, perhaps, be proper to suggest that if the lease of 1862 be invalid, (it not appearing what covenants wbre contained in the last valid lease,) the obligation of the defendant in this respect would probably be restricted to the non-commission of waste and to returning of the premises in a habitable condition; and consequently they would only be liable for a breach of this obligation.
I think the judgment should be reversed, with costs to the appellant to abide the event.