(18 Misc. Rep. 188.)

# DOUGLASS v. SEIFERD.

(Supreme Court, Appellate Term, First Department.   October 29, 1896.)

1. LANDLORD AND TENANT—TERM OF LEASE.
    Where premises were hired "at the rate of" $35 a month, without specifying the term, the hiring was for an indefinite term.

2. SAME—TENANCY BY THE MONTH—IMPLICATION.
    The tenancy was not by the month where the tenant paid one year's rent in advance, and afterwards paid the succeeding six months' rent at one time, though the payment of the year's rent was made in acceptance of the landlord's offer to allow interest on the advanced payment.

3. SAME—SURRENDER—ACCEPTANCE.
    It was not a surrender of leased premises that the tenant left the keys with the janitor, who does not appear to have been authorized to accept them, where the landlord promptly wrote the tenant that the keys would not be accepted as a surrender, and that the tenant would be held to the lease.

4. DISTRICT COURTS—DIRECTION OF VERDICT.
    Under Laws 1882, c. 410 (Consolidation Act) §§ 1371–1381, providing that the "mode of conducting the trial" in district courts is the same as in courts of record, it is the duty of a judge of a district court to direct a verdict in all cases in which it would be the duty of the judge of a court of record to do so.

5. SAME—VERDICT—MOTION TO SET ASIDE.
    The denial for supposed want of power of a motion made on the coming in of a verdict to set the verdict aside as against the law and the evidence did not bar a subsequent motion by the same party according to prescribed practice for the same relief.

6. STATUTES—OPERATION AND EFFECT.
    Laws 1896, c. 748, providing that a motion to set aside a verdict or to vacate or modify a judgment in the district court may be made for the causes specified in Code Civ. Proc. § 999, and declaring that the act shall take effect "immediately," applies to a case which was being tried on the day of its passage.

Appeal from Eleventh district court.

Action by Margaret K. Douglass against Joseph Seiferd for rent. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

William Stanton (J. Philip Berg, of counsel), for appellant.
A. M. & M. B. Maclay, for respondent.

McADAM, J.   The action was to recover $225 rent from November 1, 1895, to May 1, 1896, of the first flat in premises No. 327 East Eighty-Sixth street, alleged in the complaint to have been let for one year from May 1, 1895, to May 1, 1896.   The answer was a general denial, and pleaded as a separate defense that the tenant had vacated the premises and surrendered them to the landlord October 29, 1895.   The issue contested at the trial was whether the hiring was by the month or by the year, it being conceded that if the hiring was by the year, and there was no effectual surrender, the plaintiff would be entitled to recover the amount claimed; if, on the other hand, the letting was a monthly one, or there had been a valid surrender, the defendant should prevail.   It appeared by the evidence, without contradiction, that the defendant took possession of the

premises in June, 1890, and occupied them continuously up to about November 1, 1895, when he moved out. The husband of the plaintiff, who acted as her agent, testified that the hiring was by the year, while the defendant's wife, who claims to have made the contract on his behalf, testified that the hiring was "at the rate of" $35 a month. Such a hiring, as applied to the relation of master and servant, has been considered an indefinite one (Martin v. Insurance Co., 148 N. Y. 117, 42 N. E. 416), and, if so construed with reference to a tenant, would not particularly specify the term.

In view of the finding of the jury in favor of the defendant, it must be assumed that the premises were not let for the definite term of one year; and it becomes necessary to consider the effect of the statute providing that "agreements for the occupation of land or tenements, in the city of New York, which shall not particularly specify the duration of such occupation, shall be deemed valid until the first day of May next after the possession under such agreement shall commence," etc. 2 Rev. St. (9th Ed.) p. 1818, § 1. By this act, unless a definite term was agreed upon, the letting would continue until the 1st of May following the time when possession was taken, and if the tenant remained in possession thereafter the yearly letting thus created would continue for another year. Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94; Adams v. City of Cohoes, 127 N. Y. 175, 182, 28 N. E. 25, 26; Frank v. Railroad Co., 122 N. Y. 197, 218, 25 N. E. 332, 337; Schuyler v. Smith, 51 N. Y. 309. The onus was therefore cast upon the defendant of proving that a specific time had been agreed upon, to obviate the provision of the statute. To constitute a tenancy by the month, a special agreement to that effect should be made, or the tenancy must be implied from the manner in which the rent is paid; for where it is paid by the week, month, quarter, or year, a weekly, monthly, quarterly, or yearly hiring is presumed, according to the circumstances. 1 Wood, Landl. & Ten. (2d Ed.) pp. 91, 92, 126; Wilson v. Taylor, 8 Daly, 253; Woodf. Landl. & Ten. (Am. Notes by Webster) 225. Where it appears that there is an annual rent reserved, and the payment is to be made by the quarter or month or week, then the renting is a yearly letting, without regard to the periods of payment. But where there is no such letting, and there is no evidence but the mere fact of payment at intervals of a week or month, the implication is that the renting is a monthly or weekly one, just as the payment is monthly or weekly. Steffens v. Earl, 40 N. J. Law, at pages 137, 138, citing Doe v. Raffan, 6 Esp. 4; Anderson v. Prindle, 23 Wend. 616; Witt v. Mayor, etc., of New York, 6 Rob. (N. Y.) 441. If the rent during the term of the tenant's occupancy had been paid monthly, there might be room for the implication that the hiring was a monthly one, as in Wilson v. Taylor and Steffens v. Earl, supra. But it is undisputed that the tenant paid one year's rent in advance from May 1, 1892, to May 1, 1893, and in May, 1895, paid six months' rent at one time, up to November 1, 1895, and these facts destroy the implication of a monthly hiring. The tenant endeavored to explain the payment of the year's rent by the statement that the landlord's agent said the landlord was short of money, that rents were com-

ing in slowly, that there were many vacancies in the house, and that if the tenant paid the year's rent in advance the landlord would allow interest on the advanced payment. But this feature does not alter the controlling fact that the tenant actually paid one year's rent in advance, and subsequently six months' rent in advance, which acts would have precluded the landlord from dispossessing the defendant as a monthly tenant before the expiration of the year in one case, and the six months in the other; and, as the relations between the parties were reciprocal, the defendant could not disable the landlord from asserting that the tenancy was for less than a year, and still retain the right to present that claim in defense in case the landlord insisted upon his rights.

The surrender pleaded was not established, because not followed by acceptance on part of the landlord. The keys were left with the janitress, and there is no evidence of any power on her part to accept them; and the landlord promptly disaffirmed any authority upon the part of the janitress by writing the tenant that the keys would not be accepted as a surrender, and that she would hold the tenant for the rent until the end of the year. Ryan v. Jones, 2 Misc. Rep. 65, 20 N. Y. Supp. 842; Spies v. Voss (Ccm. Pl.) 9 N. Y. Supp. 532; Johnson v. Doll, 11 Misc. Rep. 345, 32 N. Y. Supp. 132; Wilson v. Lester, 64 Barb. 431.

Under these circumstances, it seems clear to us that the hiring was by the year, that there was no valid surrender, and that the landlord was entitled to a verdict.

It cannot be contended that the plaintiff consented to the submission of the cause to the jury (Sullivan v. Brooks, 8 Misc. Rep. 532, 28 N. Y. Supp. 1150; Haviland v. Price, 6 Misc. Rep. 372, 26 N. Y. Supp. 757), for she requested the justice to direct a verdict in her favor, which was declined upon the ground of want of power; the justice evidently basing his decision upon Horn v. Prior (Com. Pl.) 5 N. Y. Supp. 955, in which the general term of the common pleas, following Blumburg v. Briggs, 10 N. Y. St. Rep. 242, held that a district court justice had no power to direct a verdict. The Blumburg decision was rendered on appeal from the municipal court of Buffalo,—an inferior tribunal, not of record (Code, § 3), created in 1880 (Laws 1880, c. 344); and the statute applicable to jury trials therein is that relating to justices' courts, contained in sections 2990, 2995, and 3006 of the Code. The act creating the court provides (section 5) that "said court shall have and possess the same powers and jurisdiction as are now possessed by justices of the peace in the city of Buffalo," except as otherwise provided. The superior court of Buffalo (the appellate court which decided the Blumburg Case) said:

"This statute confers no authority upon the municipal court to direct verdicts, if no such authority or power was vested in the justice of the peace of the city of Buffalo; and as that court had no such power it would seem clear that the only conclusion to be reached is that the judge below erred in taking away from the jury the question of the fact, and directing a verdict in favor of the plaintiff."

The court reviews at length the different Code provisions applicable to jury trials in justices' courts (sections 2990, 2995, 2999, 3006),

not one of which concerns the district courts, in regard to which special provision is made by sections 1371–1381 of the consolidation act (Laws 1882, c. 410); section 1381 expressly providing that "the swearing of the jury, and mode of conducting the trial, are the same in these courts as they are in courts of record." The Blumburg decision has therefore not the slightest relevancy to the provisions of the consolidation act (particularly section 1381, referred to), for these are essentially unlike those applicable to justices' courts in other portions of the state. The term "mode," as used in section 1381, supra, means the customary manner; prevailing style; fashion (Cent. Dict.); the manner in which a thing is done; as the mode of proceeding (And. Law Dict.),—and is applicable to every step taken in the cause. It indicates the progressive course of business from the commencement to its termination (15 Am. & Eng. Enc. Law, 699), and is broad enough to authorize the justice presiding at a jury trial to direct a verdict in any cause in which a justice presiding thereat in a court of record might direct one, and the power is governed by the same rules (Baylies, Trial Prac. 228). It follows that where it would be the duty of a judge of a court of record to direct a verdict the same duty devolves upon a district court justice. Hence the request of the plaintiff should, upon the facts presented, have been granted. The justice, however, left it to the jury to determine the question whether the defendant was a yearly or monthly tenant, and the jury decided that question of law (for it was nothing else) on the evidence in favor of the defendant. The plaintiff promptly moved to set the verdict aside as against the evidence and law, but the justice declined to grant the motion for want of power; being at the time unaware of the fact that the legislature on the day of the trial, May 20, 1896, passed an act providing that:

"A motion to set aside the verdict of a jury and vacate or modify a judgment rendered in an action thereon in the said district courts, or to vacate or modify any judgment rendered upon a trial by the court without a jury, may be made for the causes specified in section 999 of the Code of Civil Procedure. Notice of such motion of not less than five days nor more than eight days shall be given to the adverse party or his attorney, within five days after the rendition of the verdict, or the entry of the judgment, and if such motion be granted, the justice who presided at the trial shall make an order setting aside the verdict, or vacating the judgment, and awarding a new trial, and setting the cause down for trial for a time to be specified in the order, or modifying the judgment as the case may require. An order of a justice opening a default and setting aside, vacating, or modifying a judgment entered thereon, or an order setting aside the verdict of a jury and vacating or modifying a judgment entered thereon, or an order vacating or modifying a judgment rendered by a justice without a jury, shall recite and contain the grounds for the order, and from the order an appeal shall lie as from a judgment in said court." Laws 1896, c. 748.

Upon discovering the existence of this act the plaintiff, following the practice therein laid down, moved to set aside the verdict and for a new trial. The court on hearing the motion granted the application, set the verdict aside, and put the cause down for trial, and from that order this appeal is taken. The denial of the motion on the coming in of the verdict, for supposed want of power, did not take away the plaintiff's right to move according to prescribed practice for

the same relief.   Schmidt v. Cohn, 12 Daly, 134.   Counsel for the defendant urges that the justice had no power to make the order, upon the ground that the act only applied to cases tried subsequent to its passage.   There can be no doubt that the statute became a law on the day of its passage, May 20, 1896, the day on which the cause was tried, for it expressly provides (section 2), "This act shall take effect immediately."   In re Miller, 110 N. Y., at page 224, 18 N. E. 141.   The rule is a familiar one that the law will not take notice of parts of a day, and to assume that this act was inapplicable the court would be compelled to find that it went into effect on the same day, but at an hour subsequent to the trial of the action.   We cannot so decide.   In Re Welman, 20 Vt. 653, it was held that a statute which takes effect from and after its passage goes into operation the day on which it is approved, and has relation to the first moment of that day,—a construction by fiction of law which is operative whenever it will promote justice.   See, also, In re Richardson, 2 Story, 571, Fed. Cas. No. 11,777.   The statute affected the remedy, and applied to all proceedings pending at the time (Wade, Retro. Laws, § 218; Southwick v. Southwick, 49 N. Y. 510; Ryan v. Waule, 63 N. Y. 57, and kindred cases), and, being remedial, must be construed to advance the remedy (Sedg. St. & Const. Law, 2d Ed., Pomeroy's Notes, 308).   This principle was applied in Dickerson v. Cook, 16 Barb. 509, to the extent of holding that the 292d section of the Code of 1849, authorizing the examination of a judgment debtor after the return of an execution against him unsatisfied applied to cases where the execution was issued before the Code took effect, as well as to those where the execution had been issued since.

The verdict of the jury was contrary to law and the evidence, and was properly set aside and a new trial awarded; and the justice had power to make the order appealed from, which must be affirmed, with costs.   All concur.