Hyacinth Green Irrevocable Living Trust v Green (2025 NY Slip Op 25152)

[*1]

Hyacinth Green Irrevocable Living Trust v Green

2025 NY Slip Op 25152

Decided on July 1, 2025

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 1, 2025
Civil Court of the City of New York, Kings County

Hyacinth Green Irrevocable Living Trust, By Oneil O. Green, as Trustee, Petitioner,

against
Nigel P.A. Green; Indeera Karam-Chand Green; John Doe; Jane Doe after Trial, Respondent.

Index No. 321316-24

David S. Harris, Esq., for petitioner
Nigel P.A. Green, unrepresented respondent

Karen May Bacdayan, J.

This is a holdover proceeding commenced in July 2024 seeking possession of the entire basement at 669 East 82nd Street, Brooklyn, NY 11236, alleged to be a two-family dwelling (hereinafter "the house" or "the subject building.") The petition alleges that petitioner is the Hyacinth Green Irrevocable Living Trust by Oneil Green (hereinafter "Oneil") as Trustee. The petition further alleges that respondent Nigel P.A. Green (hereinafter "Nigel" or "respondent") is a tenant of the subject premises who entered into possession under an oral month-to-month rental agreement on an unknown date, and the other respondents are Nigel's undertenants. (NYSCEF Doc No. 1, petition ¶¶ 3-4, 7.) The petition alleges that the premises is not subject to the Good Cause Eviction Law because petitioner is a "small landlord" as statutorily defined, who owns no more than 10 units within New York State, owning only the subject house. (Id. at 2.) Attached to the petition is a 90-day notice of termination to respondents, dated March 18, 2024, stating petitioner elects not to "renew your lease" and that respondent's lease "expires" on June 30, 2024. (Id. at 4, 90-day notice of termination.)
Nigel filed an answer on February 18, 2025, whereby he asserts that he is not a tenant of the subject premises. Rather, Nigel asserts he has a one-third ownership interest in the house as a beneficiary of petitioner. He alleges he has "sought either a formal inclusion as a co-owner of the trust property, or, in the alternative, a cash buyout reflecting [his] equitable share in the property's value." (NYSCEF Doc No. 5, answer ¶¶ 1, 6.) The answer refers to a Supreme Court proceeding under index number 191/2023 and alleges there is a "judicial stay of possession" in that proceeding, and that he has levied a notice of pendency in connection with the Supreme Court action which "effectively nullifies" this proceeding. (Id. ¶¶ 3, 7-9.) Read liberally, the answer also raises defenses of collateral estoppel, res judicata, unclean hands, lack of subject matter jurisdiction to determine the parties' ownership rights, pending appellate proceedings (alleging an appeal to the Appellate Division, Second Department of the underlying Supreme [*2]Court action has been perfected), consolidation with the Supreme Court action and a Family Court proceeding, or, alternatively, to stay the instant proceeding until such time as those related matters are fully resolved. (Id. ¶¶ 11-25.)
Gleaned from the pre-trial conference is that respondent claims he was not paying rent, but rather making payments toward the mortgage for the subject building which he claims to own in part, despite concededly being removed from the deed for the subject building in 2005. Respondent represents that there was a promise between the parties that his removal from the deed was only temporary. At the outset, petitioner discontinued as against Jane and John Doe based on respondent's representation that no other individuals aside from himself, his wife (and co-respondent), and his minor child reside in the premises.
The trial took place over two days: June 12, 2025 and June 17, 2025.
THE TRIAL
All parties were sworn in prior to their testimony. From the evidence adduced at trial, the court makes the following findings of fact:
This dispute arises amidst an ongoing legal battle between family members regarding the ownership of the house located at 669 E 82nd Street, Brooklyn, NY 11236 ("the house"). Hyacinth Green (hereinafter "Hyacinth") is Oneil and Nigel's mother. When the house was purchased, Hyacinth included Nigel and Oneil on the deed on the advice of a "church sister," and because they are her male children ("they are men"). In evidence are the following deeds: Petitioner's exhibit 1 - deed dated June 26, 2000, between Sandra Weiner and Nigel, Oneil, and Hyacinth; Petitioner's exhibit 2 - deed dated January 20, 2005, between Nigel, Oneil and Hyacinth, transferring the property to Oneil and Hyacinth; Petitioner's exhibit 3 - deed dated November 19, 2009, transferring the property from Hyacinth and Oneil to Hyacinth; and Petitioner's exhibit 4 - current deed dated November 3, 2020, transferring the property from Hyacinth to petitioner, the Hyacinth Green Irrevocable Living Trust by Oneil O. Green as Trustee. The parties dispute whether or not Nigel contributed financially to the purchase of the house in 2000, and whether Nigel provided any financial documentation to secure the mortgage. Nigel testified that he paid for the closing and that he provided documentation when applying for the initial mortgage. Oneil and Hyacinth testified that Nigel made no contributions to the purchase of the house whatsoever, and Hyacinth testified that she could not recall whether Nigel provided any proof of his finances when they applied for the mortgage.
Soon after closing on the house in June 2000, Nigel, then an owner, offered to "rent" the first floor apartment, and Hyacinth agreed to allow Nigel to occupy the first-floor apartment for the sum of $850 per month. Hyacinth recalled "clearly" that Nigel walked into the house the day after the closing and told her he would rent the first floor from her instead of her renting it to "a stranger." This agreement was not in writing, and, from the record before the court, the agreement was for an indefinite term, albeit Nigel was a deeded owner at the time. Oneil and Hyacinth also had an oral agreement that Oneil would occupy the basement apartment and pay Hyacinth $550 or $600 per month. Oneil testified that he and Nigel paid "rent" to Hyacinth because the house belonged to their mother. Nigel testified that he was not paying rent, but, rather, was paying toward the mortgage of the house which he partially owns, even after he transferred his interest to Hyacinth and Oneil in 2005 and was no longer a deeded owner. Hyacinths did not provide receipts to Nigel until the Supreme Court action was commenced, "because it was between mother and son." Hyacinth testified that she was charging both Oneil and Nigel "rent" for their use and occupancy. Hyacinth always "knew" when Nigel paid his rent [*3]because it came from a particular bank account, and
In 2003, the mortgage was refinanced. A check for $26,268.68, dated July 29, 2003, was issued to the three of them as part of the transaction. Hyacinth and Oneil testified that they signed the check over to Nigel because Nigel told them it could not be cashed with three payees, and that Nigel then took the money. Nigel's testimony in this regard was inconsistent. On the one hand, he testified that he never received any of the money; on the other hand, he testified that the check proves he was a part owner. Hyacinth credibly testified that Nigel asked to meet her at "the subway" where she signed the check over to him; that she does not know whether Oneil had yet endorsed the check when she endorsed it; that she never received any of the money; and that Nigel told her he was going to use the money to buy a house in Florida for her to live in as she aged. Oneil testified that he never received any of the money from the $26,268.68 check.
In 2005, Nigel was considering filing for bankruptcy and did not want his mother to lose the house as a result. At that time, the three of them agreed that Nigel's interest would be transferred to Hyacinth and Oneil, who then owned the property as joint tenants with rights of survivorship. Nigel remained on the first floor paying Hyacinth pursuant to their prior agreement. Nigel testified that he, Hyacinth, and Oneil all sat around his mother's dining room table and agreed that  at some point in the future to be decided by all three of them  he would become a deeded owner again. Nigel offered a copy of a document purporting to be this agreement, which he testified was signed by all three family members at the same time in each other's presence. Nigel believes that the original is in his mother's safe. In direct contradiction, both Hyacinth and Oneil testified that they had never seen this document prior to the commencement of the trial, and that the signatures on the document were not their signatures.
The property was transferred twice after 2005: in 2009, from Hyacinth and Oneil to Hyacinth, and then in 2020, from Hyacinth to petitioner. Nigel was not involved in either transfer. In or about 2013, Nigel purchased a home in Maryland. At or about the same time, "out of love" for his brother "and wanting [his brother] to enjoy a nicer space, a bigger space," Nigel agreed with his brother to "switch" apartments such that Nigel would live in the basement and Oneil would live on the first floor. Nigel testified, without documentary evidence in support, that he renovated the entire first floor and, "being an owner," took care of repairs. Similarly, he testified that after he moved to the basement, he renovated it in 2018 and in doing so spent almost $40,000; he fixed the roof and replaced the boiler "on [his] own" when it broke. Nigel stated he was relying on the "agreement" with Hyacinth and Oneil — which both unequivocally disavowed  that he was only temporarily removed from the deed, which is why he paid his portion of the mortgage and spent money on the renovation and repairs.
The text messages in evidence (respondent's exhibit L) indicate that both Nigel and Hyacinth expected that a sum certain would be paid to Hyacinth by Nigel each month. In the text messages, Hyacinth characterized the payments as rent, and Nigel characterized the payments as contributions toward the mortgage. Both Hyacinth and Nigel acknowledged that these messages were sent after the commencement of a Supreme Court proceeding challenging title, in which Nigel claims to be a rightful owner who, until commencement of this holdover proceeding, was paying toward the mortgage.
The court declined respondent's request to submit a post-trial memorandum of law, instead allowing respondent to make his arguments on the record in closing. Respondent made two interrelated arguments: (1) he never had a lease as pleaded in the notice of termination, but rather had possession of the premises under an oral agreement to pay a share of the mortgage [*4]because he maintains an ownership interest; and (2) any such agreement, whether to pay rent or to pay a portion of the mortgage, is void as against the Statute of Frauds.[FN1]

THE LAW AND ITS APPLICATION TO THE FACTS
For the following reasons, the court finds that Nigel's tenancy was, initially, a tenancy at will which ripened over time into a month-to-month tenancy. (Sawicka v Schwimmer, 187 AD3d 957, 959 [2d Dept 2020] [holding the absence of a lease term in an oral agreement "create[s] an at-will tenancy, which is not barred by the statute of frauds."] [internal citation omitted]; Israelson v Wollenberg, 63 Misc 293, 295 [App Term, 1909] ["Where one goes into possession of land under an [agreement for more than one year], his tenancy, at its inception, is a tenancy at will; but, by paying a monthly rent, he then becomes a tenant from month to month."] [internal quotation marks omitted].") However, over time, a tenancy at will can ripen into a periodic tenancy. (Israelson, 63 Misc at 295; Hand v Knaul, 116 Misc 714 [Onondaga County Ct, 1921] [holding that an indefinite oral lease to pay rent each month for different apartments of the same landlord, the tenancy at will was a monthly hiring.])[FN2]

Here, the notice of termination refers a "lease" expiration; and the petition refers to Nigel's tenancy as an "oral month to month rental agreement." A landlord-tenant relationship can be created either orally or by a writing. (Stern v Equit. Trust Co. of New York, 238 NY 267, 269 [1924].) Oral leases are valid in certain circumstances, and the nomenclature is not necessarily dispositive. "In order for an agreement, oral [as herein] or written, to be enforceable as a lease, all the essential terms must be agreed upon. These essential terms include the area to be leased, the duration of the lease, and the price to be paid." (Davis v Dinkins, 206 AD2d 365, 366-367 [2d Dept 1994] [emphases added, internal citations omitted].) If Nigel believed he was paying towards a mortgage for which he was no longer legally obligated, Hyacinth believed Nigel was paying rent. Regardless, of their subjective beliefs, the court finds that these monthly payments fit neatly into the definition of "rent" provided in RPAPL 702 (1): "[T]he term 'rent' shall mean the monthly or weekly amount charged in consideration for the use and occupation of a dwelling pursuant to a written or oral rental agreement."
The Statute of Frauds, invoked by respondent as rendering his oral lease invalid, is codified in General Obligations Law ("GOL") § 5-703 which provides in relevant part: "An estate or interest in real property, other than a lease for a term not exceeding one year ... cannot be created, [or] granted ... unless by act or operation of law, or by a deed or conveyance in [*5]writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing (emphasis added)." (GOL 5-703[1] [emphasis added].) GOL § 5-701 provides that if the agreement establishing the landlord-tenant relationship is for more than one year, then it must be in writing.
RPL § 232 states in full:
"Duration of certain agreements in New York[.] An agreement for the occupation of real estate in the city of New York, which shall not particularly specify the duration of the occupation, shall be deemed to continue until the first day of October next after the possession commences under the agreement."
In Stauber v Antelo, 163 AD2d 246, 248 (1st Dept 1990), citing to RPL § 232 and holding that an agreement to occupy a definite area of the premises for an indefinite term became a month-to-month tenancy "by operation of law," the Appellate Division, First Department set forth what by then had become a self-evident legal construction relevant to the case at bar:
"It is axiomatic that in New York, a person who enters upon property by permission of the owner for an indefinite period, even without the reservation of rent, is considered to be a tenant at will[.] Moreover, the acceptance of rent on a monthly basis creates a month-to-month tenancy." (Stauber, 163 AD2d at 248 [internal citations omitted].)
To this day, RPL § 232 appears rarely in caselaw despite its ease of applicability. (See e.g. Chinea v Chinea, 85 Misc 3d 1232[A], 2025 NY Slip Op 50323[U] [Suffolk Dist Ct 2025], infra [finding that, without any mention of RPL § 232, a tenancy of indefinite duration was a tenancy at will that became a month-to-month tenancy].) Applying RPL § 232 to the facts herein, Nigel's occupancy of indefinite duration (tenancy at will) of the first floor apartment terminated on October 1, 2005, i.e., "the first day of October next" after he transferred ownership to Hyacinth and Oneil on January 20, 2005; and Nigel's second oral lease of indefinite duration to exclusively occupy the basement apartment terminated by operation of law on "the first day" of the October after the commencement of the tenancy in or about 2014. (Id.) The application of RPL § 232 renders Nigel a month-to-month tenant of the first floor from at least 2005  when he deeded his interest in the house to Hyacinth and Oneil  until 2014, when he relocated to the basement unit with an agreement to pay a sum certain for use and occupancy of a specific area of the house; when Nigel took occupancy of the basement apartment for an agreed upon fixed sum, his tenancy at will in the basement, pursuant to RPL § 232, expired the "October next" by operation of law. (Id.) Thereafter, Nigel became a month-to-month tenant by continuing to pay monthly for the exclusive use of the basement apartment.
Even without reference to the infrequently cited RPL § 232, case law has long supported this court's finding that Nigel's tenancy at will ripened into a month-to-month tenancy under the facts adduced herein. In Fink v Standard Bread Co., 61 Misc 626 (App Term, 1st Dept 1909), the parties had entered into an oral lease providing, among other stipulations not relevant here, for a term of "10 years at a fixed rent payable in monthly installments." (Fink, 61 Misc at 626.) The Fink court held that the "oral lease . . . to make a fixed payment each month" was invalid under the Statute of Frauds, and that "the rule in such cases is that the lease is ineffectual to vest any term whatever in the lessee, and when the latter goes into possession under such a lease, with the consent of the lessor, such lessee becomes, in the absence of any other agreement, a [*6]tenant at will merely, subject to liability to pay rent, at the stipulated rate, for the use and occupation." (Id.)
Here, as in Fink, Nigel took occupancy under an oral lease to occupy the first floor of the house for a fixed sum per month for an indefinite period of time, an agreement that was invalid under the Statute of Frauds. Nigel ceased to have an ownership interest in the property in 2005 when the deed was transferred to Hyacinth and Oneil as joint tenants with rights of survivorship. He thereafter continued to reside in and have exclusive enjoyment of the first-floor apartment as other than an owner, paying $850 monthly for his use and occupancy for an indefinite term. In or about 2014, after his purchase of the Maryland property, Nigel moved to the basement apartment and paid a lower monthly amount to Hyacinth for the next 10 years, again for an indefinite term.
In Israelson v Wollenberg, 63 Misc 293, 295 (App Term, 1st Dept 1909), the court found that although the defendant's tenancy was a tenancy at will "at its inception," he became "a tenant from month to month" when he paid, and plaintiff accepted, a monthly rent. (Wollenberg, 63 Misc at 295.)[FN3]
Here, when Nigel's relationship with Hyacinth as a co-owner ceased to exist, as recorded in the 2005 deed, Nigel, as in Wollenberg, continued in occupancy of the first floor paying to Hyacinth, which Hyacinth accepted, a fixed sum per month. The court finds that  under the reasoning in Wollenberg and Fink at that juncture, Nigel's first tenancy at will of the first floor apartment became a month-to-month tenancy. Here as in Wollenberg, "this is the only legal construction which the facts will permit." (Id. [internal citation omitted]; see also E. Ramapo Cent. Sch. Dist. v Mosdos Chofetz Chaim, Inc., 52 Misc 3d 49, 51 [App Term, 2d Dept., 9th & 10th Jud Dists 2016]; Douglass v Seiferd, 18 Misc 188, 191 [App Term, 1st Dept 1896] [implying a tenancy "from the manner in which the rent is paid, for where it is paid by the week, month, quarter or year, a weekly, monthly, quarterly or yearly hiring is presumed, according to the circumstances."])
Approximately 10 years later, Nigel and Hyacinth agreed to Nigel's second tenancy at will, which, shortly thereafter became a month-to-month tenancy. When Nigel relocated from the first floor to the basement as a non-owner in or about 2014, paying from the inception of his occupancy of the basement apartment an amount upon which he and Hyacinth mutually agreed, he entered into exclusive possession of a specific area of the house under an oral lease of indefinite duration which graduated into a month-to-month tenancy for which Nigel paid to Hyacinth $600 per month. (See Fink, 61 Misc at 626; Wollenberg, 63 Misc at 295; Dinkins, 206 AD2d at 367; Seiferd, 18 Misc at 191.) Hyacinth and Nigel formed a binding agreement, manifested not by their "subjective intent" but by their "objective manifestations of [their] intent . . . as gathered by their expressed words and deeds." (Brown Bros. Electrical Contrs., Inc. v Beam Constr. Corp., 41 NY2d 397, 399 [1977] [internal citation omitted].)[FN4]

Recently, in Chinea v Chinea, 85 Misc 3d 1232(A), 2025 NY Slip Op 50323(U) (Suffolk [*7]Dist Ct 2025), on facts striking similar to those in the instant case, petitioner commenced a proceeding for possession of real property from respondents who were not on the deed to the building therein, nor was there a written lease between the parties. Respondents had entered into an agreement with petitioner to help petitioner "pay the mortgage" from February 2023 to February 2025. Respondents claimed on ownership interest in the property. The Chinea court rejected respondents' argument that "this is 'not a Landlord-Tenant situation' because [they] never had a lease." Without mention of RPL § 232, the court concluded (that while the original agreement of indefinite duration was invalid under the Statute of Frauds, the tenancy that had been created was a monthly tenancy in compliance with GOL § 5-703. The court found "that the [p]etitioner and [r]espondents had an oral lease pursuant to which the [r]espondents were to pay [a fixed sum] per month (in either rent or mortgage)," declining to differentiate between rent payments and mortgage payments. (Id. at *4 [emphasis added].) The court found that "[w]hile [r]espondents claimed they made payments directly to the mortgage company . . . and claimed that they expended funds to improve and/or maintain the property, they produced no proof of the same." (Chinea, 2025 NY Slip Op 50323[U], *3-4.) Finally, the court "reject[ed] the [r]espondents' contention that they had an ownership interest in the [s]ubject [p]remises because such contention [was] contradicted by the two deeds entered into evidence." (Id. at *4.)
Likewise here, the purported agreement between Hyacinth, Oneil, and Nigel  to make Nigel a part owner at some point in the future — never came to fruition. Indeed, since Nigel's transfer of his interest in the house to Hyacinth and Oneil in 2005, there have been two recorded deeds transferring ownership of the house, neither of which comprised any transfer of interest to Nigel. As in Chinea, Nigel testified that, because he has an ownership interest in the house, he improved the house by renovating both the first floor and basement apartments, fixing the roof, and replacing the boiler. As in Chinea, Nigel presented no documentary evidence to support his testimony. As in Chinea, whether Nigel's payments to petitioner are characterized as rent payments or payments towards the mortgage, there was an oral agreement for Nigel to occupy the basement and to pay a fixed sum per month while in occupancy of the basement. (See Evans as Tr. of Matte J. Evans Irrevocable Living Tr. v Evans, 85 Misc 3d 1254[A], 2025 NY Slip Op 50531[U], *2 [Civ Ct, Queens County 2025] [after trial in a summary holdover proceeding, finding an oral tenancy from month-to-month where "respondent testified he did not consider [] payments to be rent," but the court found petitioner's characterization of the arrangement as an oral month-to-month tenancy to be more credible].)
Whether through the application of RPL § 232, or pursuant to the caselaw, supra, Nigel's tenancy at will ripened at least a decade ago into a month-to-month tenancy which can only be terminated upon appropriate notice as prescribed by statute. (RPL § 232-a; RPL § 226-c.) The court holds that petitioner properly terminated Nigel's tenancy, that the notice given is reasonable under the attendant circumstances, and that petitioner is entitled to possession of the premises. Respondent's remaining defenses have been considered and are without merit.[FN5]

[*8]CONCLUSION
Accordingly, it is hereby
ORDERED that a possessory judgment shall enter in favor of petitioner as against all named respondents; and it is further
ORDERED that the warrant may issue forthwith without a stay; and it is further
ORDERED that the execution of the warrant is stayed through December 31, 2025 for respondents to vacate, conditioned upon payment to petitioner of $600 by July 7, 2025, and thereafter by the fifth of each month, commencing August 5, 2025; and it is further
ORDERED that Hyacinth shall provide receipts as required by law (RPL § 235-e); and it is further
ORDRERED that the earliest execution date is July 8, 2025 (which means that if respondent does not pay $600 directly to Hyancinth, who must provide a receipt, on or before July 7, 2025, or by the 5th of each month thereafter through December 2025, Hyancinth may cause the marshal to serve a marshal's notice as required by law).
This constitutes the decision and order of this court.
DATED: July 1, 2025
Brooklyn, NY
Karen May Bacdayan, JHC

Footnotes

Footnote 1:Nigel provided the court with two citations: Anderson v Tompkins, 96 NY2d 781 (2001), and OLeary, 117 AD3d 1585, which he stated was from 2014 but did not provide the citation for the Judicial Department. The court could not find either case after searching on both WestLaw and Nexis. When searching from "Anderson," the court did find an 1820 case from the state of Virginia, Anderson v Tompkins, 1 Brock 456, whose headnotes on WestLaw speak to types of tenancies but not to the Statute of Frauds. The court could not find any cases for OLeary: a search for 117 AD3d 1585 found a criminal court decision from the Fourth Appellate Division, People v Munoz.

Footnote 2:In Knaul, the court was tasked with determining whether the tenancy at will had ripened into a tenancy from "month-to-month" or a "monthly hiring" for the purposes of deciding if the tenant must give a landlord to terminate their tenancy. This distinction is not relevant here.

Footnote 3:Neither Fink v Standard Bread Co., 61 Misc 626 (App Term, 1st Dept 1909) nor In Israelson v Wollenberg, 63 Misc 293, 295 (App Term, 1909) make mention of RPL § 232. It is not clear to the court whether RPL § 232 was in effect at the time, passing the legislature as it did in 1909.

Footnote 4:When Wollenberg was decided in 1909, it is not clear whether Real Property Law ("RPL") § 232 had been enacted, passing the legislature as it did in 1909.

Footnote 5:The court find Nigel did not prove his entitlement to the equitable defenses of collateral estoppel, res judicata, estoppel, or unclean hands based on petitioner's "refusal to recognize" his purported "ownership interest." NYSCEF Doc No. 5, answer ¶ 23. Nigel did not present any order from the Supreme Court action that stays this proceeding, thus the "pending appellate proceedings" are not a defense to this proceeding. Nigel further asserted that this court lacks jurisdiction to determine the parties' respective ownership rights, and that this proceeding should either be consolidated with the Supreme Court action and a Family Court proceeding, or in the alternative should be stayed "until such time as those related matters are fully resolved." NYSCEF Doc No. 5, answer ¶ 22. While Nigel is correct that this court cannot determine ownership rights, it need not do so to find petitioner established standing to maintain this holdover proceeding; any issue regarding petitioner's deed for the subject building (or any preceding deeds) is the subject of the Supreme Court action. As for consolidation, Nigel did not file a motion seeking to consolidate this proceeding with the Supreme Court action or the Family Court proceeding, nor would this court have the authority to do so.